Suppose I owed 500*l* for the purchase money of lands to be conveyed to me, and I deliver accounts due to me from other persons to my creditor, which he agrees to receive and collect in discharge of that sum, this need not be reduced to writing under the statute of frauds; and if without my default he should not be able to collect the debts which he had agreed to receive as payment, it must be his loss.

It is indisputably established by the proof that the appellee did know of the sale made by *Trueman* to the appellant; that he did afterwards agree to hold *Trueman* personally and only answerable for what *Trueman* owed for the land, more than the balance due from the appellant to *Trueman*, on the appellant's agreeing to pay to him the appellee, that balance; and that in consequence the appellant gave up to *Trueman* the bond he had received for the conveyance, and took in lieu thereof an assignment of the bond given by the appellee; by this means relying on the engagement of the appellee, the appellant deprived himself of any remedy against *Trueman*. He might have brought suit upon the bond, had it not been given up, against *Trueman*, while solvent, and thereby forced him to have paid up the purchase money to the appellee. The appellee *ought* to have compelled *Trueman* to have paid up the purchase money while he was able to have paid. He had it in his power so to have done, having *Trueman's* bonds for the money. This he neglected; indulged *Trueman* until he became insolvent, and now, contrary to his engagement, and in violation of it, wishes to cause that loss, which has been entirely owing to himself, to fall upon the appellant, who was by his promises deprived of the means of preventing it.

THE COURT OF APPEALS, [*Rumsey*, Ch. J. *Mackall* and *Jones*, J.] at this term, (June term 1799,) *affirmed* the decree of the court of chancery.

## COURT OF APPEALS, JUNE TERM, 1799.

### WHETCROFT *vs.* CHRISTIE.

APPEAL from a decree of the court of chancery, dismissing the bill of complaint. The bill states, that the complainant purchased of the defendant at Baltimore, in May 1775, *thirty-one* servants, at 9*l*. 10*s*. 0*d*. sterling each, one half to be paid in hand, and the other half in six months, on giving security. That the complainant did

June 1799.

Whetcroft
vs.
Christie.

not pay the cash in hand, but proposed to send the money from Annapolis to Baltimore on his return home; and entered into two separate bonds, with *Bernard O·Neill* security, one bond conditioned for the payment of 147*l*. 5*s*. 0*d*. sterling in a few days, and the other conditioned for the payment of the like sum in November following. That on his return to Annapolis he sent to his correspondent Mr. *Lynch*, bills and cash to the amount of the first bond, and requested him to pay the same to the defendant in discharge thereof. That the said *Lynch* shortly after sent to the complainant the said first bond, which the complainant cancelled, and which has been since burnt with his other papers, when his house was burnt down. That afterwards the complainant sent the defendant *Daniel Stephenson's* bill of exchange for 100*l*. sterling, for which the defendant sent a receipt dated 16th June 1775. That he afterwards forwarded to the said *Lynch*, to be paid to the defendant, a bill of exchange for 22*l*. 4*s*. 0*d*. sterling, and 10*l*. 7*s*. 0*d*. sterling in cash, which he believes the said *Lynch* paid. That he ought to be allowed fourteen guineas for one of the servants returned to the defendant at his request, &c. That these payments, &c. amount to 147*l*. 5*s*. 0*d*. and fully discharged the said second bond. That the defendant soon afterwards left the state, and the complainant could not ascertain in whose hands the said bond had been deposited. That he was called upon in 1787, by *J. Jaffray*, for payment of the said bond, which the defendant refused, and suits were thereon brought against the complainant, and his security, in the general court. That the said *O·Neill*, the security, permitted judgment to be entered against him at May term 1788, for the full amount of the said bond, to be released on payment of 147*l*. 5*s*. 0*d*. sterling, with interest from the 6th of May 1775, to the 4th of July 1776, and from the 3d of September 1788 till paid, and costs; and on the docket of the said court there is an entry made that the said judgment is to be subject to terms filed; which said terms cannot now be found; but he alleges that the purport of them was, that the said judgment was to be regulated by the event of the suit commenced against the complainant on the same bond. That on the trial of the said suit against the complainant, the jury allowed him for the said payment of 100*l*. sterling, but the complainant, not being in possession of any evidence to prove the other payments, &c. a judgment was entered on the verdict for the penalty of the said bond, to be released on the payment of 118*l*. 7*s*. 11*d*. current money, with interest thereon from the 26th of May 1791, till paid, and costs. Upon which judgment the defendant's attorney or agent has threatened to issue ex-

ecution, &c. whereby the complainant will not only be compelled to pay the said sum last mentioned, but also the difference between that sum and the sum for which judgment has been obtained against the said *O'Neill* his security. Prayer for injunctions, &c. which were granted.

The defendant, by his answer, states, that on the 5th of May 1775, he sold 31 servants to the complainant, (*Bernard O'Neill* security,) at 9*l*. 10*s*. 0*d*. sterling each, one half payable on the 16th June, and the other on the 6th of November. That on the 17th June 1775, he received *Stephenson's* bill of exchange for 100*l*. sterling, in part of the price of the servants. That one of the servants, a doctor, was not delivered, for which he abated fourteen guineas. That about the 28th of July 1775, he received a bill of exchange for 22*l*. 4*s*. 0*d*. more, in part payment for the servants, and at the same time he received 10*l*. 7*s*. 0*d*. in cash. That the receipt mentioned in the complainant's bill was for the identical bill of exchange for 100*l*. before mentioned. That the foregoing different sums amounted to 147*l*. 5*s*. 0*d*. were received in payment of the bond for the one half of the said servants, which was payable on the 16th of June as before mentioned. A commission issued and testimony taken, &c.

HANSON, Chancellor, (May term 1795.) The facts that appear from the bill, answer and proofs, uncontroverted by either party, are these—In May 1775 the complainant, with *Bernard O'Neill* his surety, executed, for a valuable legal consideration, two bonds, each of which was conditioned for the payment to the defendant of 147*l*. 5*s*. 0*d*. sterling, the first bond payable in June following, and the second bond payable in November following. On the 28th of July 1775, the complainant had paid, in bills of exchange and money, divers sums, which with 14 guineas deducted on account of a servant man, amounted exactly to 147*l*. 5*s*. 0*d*. sterling, the sum for which each of the bonds was passed. Some years after the termination of the war with Great Britain, an action was brought in the general court, on the second bond, against each of the obligors. In the action against the principal, judgment was obtained on the verdict of a jury, for the amount of the principal, with such interest as is usually given to British creditors, (the defendant being considered as a British creditor,) deducting the sum of 100*l*. sterling for a bill of exchange paid on the 16th of June 1775. Against the surety judgment was obtained for the whole principal, with interest as aforesaid. And on the complainant's bill filed in this cause, injunction was granted to stay proceedings on both judgments.

June 1799.

Whetcroft
vs.
Christie.

It is now the chancellor's business to determine, from what appears on the proceedings, whether or not the injunction shall be dissolved; and if it be dissolved, on what terms the dissolution shall be granted; or to what amount the defendant shall be allowed to levy on each of the defendants at law by his execution.

The complainant alleges in his bill, that the first bond was by him fully discharged before the deduction aforesaid of the 14 guineas, and before any of the payments aforesaid in bills and cash were made. The defendant expressly denies this by his answer; and the complainant has not produced any proof whatever to establish his allegation.

Equally defective in proof is he with respect to another allegation, viz. that the judgment against his surety was to depend on the event of the trial in the action against himself. Indeed he has not produced the smallest evidence to establish any one material fact charged in the bill which is denied by the defendant. There is therefore, nothing to justify a continuance of the injunction with respect to himself; and the only question to be considered is, whether or not the defendant shall be allowed to levy by his execution at law against the surety a greater sum than that for which he obtained judgment against the principal.

There can be no doubt, that where a man becomes security for another, he cannot be justly indebted to the obligee on the bond passed by him and his principal, a larger, or any other sum than justly is due from the principal; but it is not impossible for the principal to be discharged from the debt, or a part thereof, whilst the security remains liable at law, without being entitled to relief in equity. The situation of the surety in the present case appears to the chancellor to be precisely so. He is liable at law for 100l. sterling, with interest, more than his principal is liable for, and nothing has been shewn to entitle him to relief from this court; on the contrary, it appears that the principal ought to be liable for as much as the security.

The chancellor by no means would be understood to determine expressly against the verdict of a jury, when neither fraud nor surprise has been alleged. The jury, by allowing the complainant credit for 100l. on account of the bill of exchange paid on the 16th of June 1775, did not find the only fact on which the case here depends; nor ought the chancellor's refusing to allow the surety the same credit to impress an idea that the chancellor either sets aside the verdict, or determines that the surety in a bond is *justly* indebted more than his principal.

The dispute in this court is not whether the said sum was paid. It is whether the first bond was discharged before that and other sums were paid; and this is a question which does not appear to have been before the jury. When the suit at law was brought on a bond for 147*l*. 5*s*. 0*d*. passed in May 1775, and the defendant proved the payment of 100*l*. in June following, the jury could not do otherwise than give credit for the payment; unless it had been stated to them that the payment was applied towards the discharge of another claim. The bill does not state that on the trial there was an inquiry into all the transactions between the parties. It is extremely probable that the counsel of the plaintiff had not been apprised of the circumstance of two bonds passed on the same day; and this case may well serve to shew the danger of such transactions. The verdict, in truth, establishes nothing more than that the complainant, in May 1775, passed a bond to the defendant for 147*l*. 5*s*. 0*d*. and in June following paid him the sum of 100*l*. all this appears from the bill and answer; from which appear other important facts which are not even alleged to have been stated to the jury.

The complainant has obliged the defendant to answer his allegations on oath. The answer is full, clear and explicit. It denies expressly every matter on which the complainant grounds his equity, and not a tittle of proof has been adduced to prove it. In short, there does not appear any reason wherefore the defendant should not be restored, as nearly as may be, to the situation he was in, before this court interposed on the mere affidavit of the complainant.

THE INJUNCTIONS were *dissolved*, and the *bill dismissed*, with costs to the defendant.

The complainant appealed to the Court of Appeals.

*Key*, for the appellant.

*Cooke*, for the appellee.

THE COURT OF APPEALS, at this term, *affirmed* the decree of the court of chancery.

JUNE 1799.

Whetcroft
vs.
Christie.

———●※●———

GENERAL COURT, (E. S.) SEPT. TERM, 1799.

NELM's Lessee *vs.* SMITH.

EJECTMENT for a tract of land called *Kirkminster*, surveyed in the year 1689. The defendant took de-